IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| YOBANIS VILLATORO EUCEDA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:17-cv-256 (LMB/JFA) |
| | ) | |
| YVONNE EVANS, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment in this habeas corpus action, in which petitioner, Yobanis Villatoro Euceda ("petitioner" or "Villatoro"), a citizen of Honduras who is illegally in the United States, seeks an order directing the Department of Homeland Security[1] to release him on bond or, at a minimum, conduct a hearing to determine whether he ought to be released on bond. For the reasons stated in this Memorandum Opinion, respondent's Motion for Summary Judgment will be granted and petitioner's Motion for Summary Judgment will be denied.

### I. BACKGROUND

The material facts are not in dispute. See Pet. Memo. 1. Villatoro admits that "[h]e first arrived in the United States, without being admitted or inspected, at Laredo, Texas on" April 16, 2006. Resp. SUMF ¶ 1. U.S. Immigration and Customs Enforcement ("ICE") determined that he was inadmissible because of his undocumented status, processed him for expedited removal, and he was removed on April 22, 2006. Id. at ¶ 2.

---

[1] The respondent is Yvonne Evans ("respondent"), Immigration and Customs Enforcement field office director.

Villatoro returned to the United States approximately one month after being removed. Id. at ¶ 3 n.3. Over ten years later, on July 26, 2016, he was convicted of possession of cocaine in the Arlington County Circuit Court and received a sentence of probation to last until July 20, 2018. Id. at ¶ 4. ICE arrested him on September 7, 2016, having reinstated the removal order originally entered in 2006. Id. at ¶ 5. Because a reinstated order of removal is not subject to administrative or judicial review, since September 7, 2016, ICE has detained Villatoro pursuant to 8 U.S.C. § 1231(a)(2), which requires the government to detain persons who are subject to final orders of removal. See Resp. SUMF ¶ 5; 8 U.S.C. §§ 1231(a)(2); 1231(a)(5).

Although reinstated orders of removal cannot be reviewed, persons subject to such orders can apply for "withholding" of removal under 8 U.S.C. § 1231(b)(3) based on a reasonable fear of persecution or can invoke the protections of the Convention Against Torture ("CAT"). Villatoro filed such an application, to which he attached the following handwritten affidavit:

> As part of my bull riding job, I travelled a lot. Friends told me that the three drug dealers were looking for me at my house. When I returned home, I tried to hide, either stay indoors or when I went out, I would take alternative routes.
> My bull riding group was known as Los Bravos de la Esperanza and was composed of four bull riders.
> A friend Dario, rode bulls with me. The drug dealers could not find me and left a message with Dario. The drug dealers told Dario to tell me that if I was unwilling to cooperate with the drug dealers, that I would be killed. I was afraid and decided to flee. The drug dealers returned to my house looking for me.
> I came to the United States because I knew my life was in danger. I could not call the police. The police were paid by the drug dealers. I saw drug dealers give police officers envelopes and folders. Common sense dictates that it is cashed [sic].
> In addition, it is well known the police corruption in Honduras.
> In the US, I was deported to Honduras. I knew my life was in danger. I fled again. I was in Honduras for about one week and returned.

2

> The drug dealers targeted my family. My nephew, Sterling Flores, was shot and killed by the drug dealers. In addition, Santos Saul Flores Euceda[2] was shot. The drug dealers thought he was killed but he survived.
>
> I cannot return to Honduras. I know that the drug dealers will kill me. I refused to transport drugs for them and that is why I was targeted for death. I also know that the police will not protect me because the police receives [sic] money from the drug dealers.

Pet. Ex. 2, [Dkt. 9-2] at 9–14. Accordingly, Villatoro argued that he was in danger because of his membership in the social group comprised of his family and in danger of police-sanctioned torture. Pet. Memo. 4.

The reviewing U.S. Customs and Immigration Services ("USCIS") officer was not persuaded by the application, and concluded that Villatoro had not demonstrated a reasonable fear of persecution based on the law's requirements. Resp. SUMF ¶ 6. Petitioner sought review of that determination, and on November 30, 2016, Immigration Judge Karen Donoso-Stevens, vacated the USCIS officer's determination, id. ¶ 7, thereby initiating full proceedings to determine whether Villatoro was eligible for withholding of removal.

On January 25, 2017, the same judge held the merits hearing on Villatoro's withholding claims. Id. at ¶ 10. After conducting an evidentiary hearing, the immigration judge issued an oral ruling denying Villatoro's application. Id. at ¶ 11. With respect to his § 1231 claim, the immigration court concluded that Villatoro had "not shown that the narcotraffickers were motivated to harm him because of nationality, race, religion, or membership in a particular social group, or political opinion" as is required to be eligible for withholding of removal. Resp. Ex. 5, [Dkt. 5-5] at 5. In so finding, the immigration court rejected Villatoro's claim that his family counted as a protected "particular social group" under the statute, citing Matter of Acosta, 19

---

[2] An affidavit from his mother speaks of another nephew, Raduel Estanly Flores Zavala, who was shot by unknown people after being deported from the United States. Pet. Ex. 2, [Dkt. 9-2] at 15.

I&N Dec. 211 (BIA 1985). In summary, the court found, "In the instant case [Villatoro's] proposed social group is only of family members. In the instant case it is overbroad, ambiguous, and not socially distinct." Resp. Ex. 5, [Dkt. 5-5] at 6.

The immigration court gave an alternative reason for denying Villatoro's § 1231 application, explaining that "[e]ven if the Court determined that [Villatoro's] social group of family members was a cognizable social group, [Villatoro] has not shown that his membership in this group was the central reason the narcotraffickers approached him and requested that he transport drugs on their behalf." Id. at 6. That alternate conclusion was supported by the court's determination that there was insufficient evidence to "conclude that the narcotraffickers [initially] targeted [Villatoro] because he was a member of a family group" and that Villatoro had "not shown how his family membership is the reason for the fear." Id. Although there was evidence in the record that three of his family members had been shot, the court determined that not enough was known about the circumstances of those attacks to conclude that the victims were targeted because of their membership in the family group. Id. at 7.

The immigration court also denied Villatoro's claim for withholding of removal under the CAT, finding that he had not shown he was likely to be tortured "by, at the instigation of, or with the consent or acquiescence of a public official" if he returned to Honduras. Pet. Ex. 5, [Dkt. 5-5] at 8. Although Villatoro believes this finding was also error, he has urged this Court to focus on his § 1231 claim for purposes of these proceedings. Pet. Memo. 5. Petitioner appealed to the Board of Immigration Appeals ("BIA"), which has not rendered its decision. Resp. SUMF ¶ 12. The parties filed their briefs in the BIA on April 10, 2017. Id. at ¶ 13.

4

## II. DISCUSSION

### A. <u>Standard of Review</u>

Summary judgment is warranted where "there is no genuine dispute as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the parties file cross-motions for summary judgment, the court "must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." <u>Krpan v. Registry of Interpreters for the Deaf, Inc.</u>, No. 1:15-cv-458, 2016 WL 889662, at *4 (E.D. Va. Mar. 8, 2016) (internal citations and quotation marks omitted). For each motion, the Court must "resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion," <u>id.</u> (internal citations and quotation marks omitted); however, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to defeat summary judgment, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). For a dispute to be "genuine," there must be "evidence such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> at 248. Likewise, to amount to a "material" dispute, the issue must potentially "affect the outcome of the suit under the governing law." <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001).

If the nonmovant bears the burden of proof, the moving party may prevail by demonstrating "that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–25 (1986). To survive summary judgment, the nonmoving party must raise "specific facts" rather than mere "metaphysical doubts" to refute the movant's position. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted). If the nonmoving party fails to raise facts to support

5

an "essential element" of its claim, the moving party is entitled to judgment as a matter of law. Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 94 (4th Cir. 2011).

### B. Analysis

Title 28 U.S.C. § 2241(c)(3) authorizes district courts to grant writs of habeas corpus when a person is in custody "in violation of the Constitution or laws or treaties of the United States[.]" Petitioner argues that his custody is unlawful because he is likely to prevail on his appeal in the BIA and therefore that his removal is not likely in the reasonably foreseeable future and that his continued detention, which has now exceeded six months, violates the Due Process Clause. Respondent argues that the ordinary processing of appeals in the BIA does not trigger the due process concerns raised by the petitioner.

When an alien seeks withholding of removal based on a fear of persecution or torture, a USCIS asylum officer makes an initial determination about whether the alien has a "reasonable fear." 8 C.F.R. §§ 208.31(b) (establishing the initial review procedure), 241.8(e) (authorizing reasonable fear determinations for aliens subject to reinstated orders of removal). If the USCIS officer rejects the alien's request, the alien may appeal to an immigration judge. Id. at § 208.31(f). If the immigration judge determines that the alien does have a "reasonable fear," then a full withholding proceeding will be scheduled. Id. at § 208.31(g)(2).

To succeed in that proceeding on a claim for § 1231 withholding, the alien must "establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). To qualify for withholding under the CAT, the alien must establish that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal," and that the torture would be "by or at the instigation of or with

the consent or acquiescence of a public official or other person acting in an official capacity." Id. at §§ 1208.16(c)(2); 1208.18(a)(1). If the immigration judge determines that either of those standards has been met, the petitioner cannot be removed to "the country of risk," but may still be removed to a "non-risk country." Lanza v. Ashcroft, 389 F.3d 917, 933 (9th Cir. 2004).

The respondent argues, and petitioner has not disputed, that the reinstatement of a removal order is administratively final, such that detention of the alien in question is mandatory until ICE removes the petitioner.[3] See 8 U.S.C. § 1231(a)(1)–(2). Accordingly, the parties do not dispute that an alien who is subject to a reinstated removal order will be detained throughout the withholding proceedings described above.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that truly indefinite detention under the Immigration and Nationality Act would implicate serious constitutional concerns, and therefore construed statues that would facially authorize indefinite detention to contain an "implicit 'reasonable time' limitation." 533 U.S. at 682. The Court considered it "obvious" that "indefinite, perhaps permanent, deprivation of human liberty" raised a "serious constitutional problem." Id. at 692. Because of that concern, the Court adopted a framework for reviewing the detention of aliens who have been in custody for more than six months:

> After [the] 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not

---

[3] Although the Fourth Circuit has not addressed this issue, the courts which have addressed it are split. Compare Guerra v. Shanahan, 831 F.3d 59, 64 (2d Cir. 2016) (holding that a reinstated removal order is not "administratively final" while withholding proceedings are pending), with Padilla-Ramirez v. Bible, 180 F. Supp. 3d 697, 701 (D. Idaho 2016) (concluding, along with most district courts, that such orders are "administratively final" even during withholding proceedings). Because petitioner has not disputed the respondent's argument, this Court will not address the split of authority.

7

mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701. Successful petitioners under the Zadvydas framework prototypically include persons whom the government is "unable to remove," Id. at 695, or persons who are "left in [a] removable-but-unremoveable limbo," Jama v. ICE, 543 U.S. 335, 347 (2005). For example, one petitioner in Zadvydas came from a country lacking a repatriation treaty with the United States and another petitioner was not recognized as a citizen by any country. 533 U.S. at 684, 686. Given those facts, it was unlikely that the government would be able to successfully remove the petitioners even when all legal issues surrounding their eligibility for removal had been finally resolved. See id.

By contrast, the ordinary delays associated with processing an alien's claim for withholding or asylum do not normally trigger the concerns raised in Zadvydas. See Castellanos v. Holder, 337 F. App'x 263, 268 (3d Cir. 2009) ("While [petitioner's] detention lacks a certain end date, the end is still reasonably foreseeable—the completion of removal proceedings."); Mancera v. Kreitzman, 2016 WL 1249600, at *4 (E.D. Wis. Mar. 29, 2016) ("And although the withholding-only proceedings—initially, on appeal, on remand, and now again on appeal—have taken a significant amount of time, this is simply not a case in which removal is 'no longer practically attainable' as in Zadvydas."). Indeed, if such procedural delays were sufficient to trigger Zadvydas, many if not most BIA matters would be subject to parallel proceedings in district courts, given the processing times associated with such proceedings. See Haughton v. Crawford, 2016 WL 5899285, at *6 (E.D. Va. Oct. 7, 2016) (discussing the "burgeoning time to completion" in immigration cases). Of course, in cases of exceptional delay or government foot-dragging, bureaucratic delays may raise constitutional concerns. See Tijani v. Willis, 430 F.3d

1241, 1242 (9th Cir. 2005) (petitioner was entitled to habeas relief when his appeal remained unresolved after two years and eight months of confinement).

Villatoro has not demonstrated that "there is no significant likelihood of removal" under Zadvydas. His only argument is that he is likely to prevail in the BIA and therefore unlikely to be removed in the foreseeable future. His period of detention has been just over six months and his removal remains "reasonably foreseeable" if, at the conclusion of the withholding-only process, he does not prevail. Villatoro has stipulated that the government routinely removes aliens to Honduras without significant delay and that there "are no current structural or diplomatic barriers interfering with the United States' ability to effectuate removals of Honduras nationals to their native country." Def. SUMF ¶¶ 18–20. In fact, in 2006 he was removed to Honduras in less than a week. Moreover, after just seven months, it cannot be argued that this is a case of extraordinary delay, particularly given that the parties have already filed their briefs in the BIA. Accordingly, the Court has no cause to consider the potential merit of Villatoro's BIA appeal and respondent is entitled to summary judgment.

Even if the Court were inclined to consider the likelihood of success in the BIA, the immigration court's determination is not as obviously flawed as petitioner suggests. Although the Fourth Circuit has recognized that the family can constitute a "social group" under § 1231, that does not mean that all families are sufficiently socially distinct to satisfy the statutory and regulatory requirements. See Cruz v. Sessions, __ F.3d __, 2017 WL 977030, at *3 & n.3 (4th Cir. 2017) (concluding that a "nuclear" family satisfies the standard, and specifically observing that a nuclear family is limited to parents and their children). The BIA might reasonably conclude that petitioner's vague references to his "family," mentioning only a cousin and a nephew, are not sufficiently particularized.

The immigration court's alternative rationale, that the feared persecution lacks a nexus to petitioner's membership in the family group, also appears reasonable. "[W]hen membership in the proposed group is merely incidental, tangential, superficial, or subordinate to another reason for the persecution, the statutory nexus requirement is not satisfied. After all, not every threat that references a family member is made on account of family ties." Id. at *4 (internal quotation marks and citations omitted). Villatoro provided the immigration court with only a bare bones account of the shootings of three extended family members. He did not identify the perpetrators of those shootings, much less come forward with any evidence about their motives. On that record, the BIA could reasonably conclude that the petitioner has not met his burden of showing that he is likely to face persecution because of his membership in his family, rather than for simply refusing to engage in illegal activity (which is not statutorily protected under the withholding regime).

### III. CONCLUSION

Petitioner has failed to demonstrate that his removal is not "reasonably foreseeable;" therefore, relief under Zadvydas is not warranted. For these reasons, his Motion for Summary Judgment will be denied, respondent's Motion for Summary Judgment will be granted, and judgment will be entered in respondent's favor by an Order to issue with this Memorandum Opinion.

Entered this 24 day of April, 2017.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

10